IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Docket No. 1:11CR400-01 |
| | ) | |
| BRIAN DAVID KAITZ | ) | |

**DEFENDANT'S PRESENTENCE MEMORANDUM**

COMES NOW the Defendant, Brian Kaitz, by and through his attorneys, and provides his Presentence Memorandum in support of his upcoming sentencing hearing on November 4, 2011.

**SENTENCING CONSIDERATIONS**

In United States v. Booker, the Supreme Court held that the Federal Sentencing Guidelines are only "advisory." 125 S.Ct. 738, 757 (2005). While Federal Courts must still consider the defendant's sentencing exposure under the guidelines, the court is now free to "tailor the sentence in light of other statutory concerns." Id. at 757. In subsequent opinions, the Supreme Court established that the Federal Sentencing Guidelines are simply a tool to be considered alongside other statutory considerations in 18 U.S.C. §3553(a). *See* Kimbrough v. United States, 552 U.S. 85, 128 S. Ct 558 (2007); Gall v. United States, 552 U.S. 28, 128 S. Ct. 586 (2007). The statutory considerations which affect sentencing include, but are not limited to, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. §3553(a). The Supreme Court has further recognized

1

that in applying the 18 U.S.C. §3553(a) factors, a defendant who has significant post-offense rehabilitation or other mitigating circumstances can justify a sentence outside the guidelines. *See* Spears v. United States, 555 U.S. 261, 129 S.Ct. 840 (2009). Spears also provided authority to Courts to reject the drug quantity ratio contained in the Guidelines and use a different ratio when sentencing defendants. A downward departure from the Guidelines is warranted in this Defendant's case.

## BACKGROUND

Brian Kaitz is twenty-five years old, with a history of anxiety and other mental health issues spanning the last decade. Mr. Kaitz's substance abuse problems began around the age of fifteen```. His issues as an adolescent culminated in a 2003 determination by the Fairfax County Juvenile and Domestic Relations District Court that Mr. Kaitz was a CHINS (child in need of services) and a psychological evaluation was ordered. ¶77, *Presentence Investigation Report*. The evaluation noted that Mr. Kaitz engaged in substance abuse when he becomes emotionally overwhelmed. Id. The evaluator suspected that Mr. Kaitz was clinically depressed. Id. Mr. Kaitz's lack of adequate coping skills for his anxiety led to a continuance of substance abuse into adulthood.

In 2006, Mr. Kaitz voluntarily enrolled in an intensive outpatient program through Kaiser Permanente, as treatment for his cocaine use. Mr. Kaitz was able to maintain sobriety for one year, but unfortunately relapsed during a family vacation in 2007. In a short amount of time, Mr. Kaitz again became dependent on drugs to ease his anxiety. His substance use continued until his enrollment into Vanguard treatment in December 2010, which followed the November 2010 questioning by authorities regarding the charge that brings him before this Honorable Court. ¶83,

*Presentence Investigation Report.*

Following Mr. Kaitz's confrontation by the agents in November 2010, and enrollment in Vanguard in December 2010, Mr. Kaitz has succeeded in maintaining his sobriety through his own hard work and the support of his friends and family. Mr. Kaitz has also focused in therapy on changes to his lifestyle which are necessary to maintain sobriety, in addition to addressing the underlying reasons for his substance abuse. Mr. Kaitz has taken full responsibility for his behavior in the conspiracy and the role that his drug use played in his own life.

Several matters should be taken into consideration by this Court in sentencing Mr. Kaitz. These factors include the nature and circumstance of the offense; his pre-arrest and presentence rehabilitation and cooperation; the lack of a statutory minimum; the concerns regarding the establishment of sentencing guidelines for MDMA; and the need for the sentence to be imposed.

**A.     Nature and Circumstances of the Offense**

Mr. Kaitz was introduced to Marko Avramovic by a mutual friend approximately three years ago. Mr. Avramovic worked at Lima, a restaurant in D.C. that Mr. Kaitz frequented. Over time, the two became acquaintances. In February 2010, Mr. Avramovic introduced Mr. Kaitz to undercover agents, UC1 and UC2. ¶9, *Presentence Investigation Report.* The agents requested that Mr. Kaitz arrange a purchase of MDMA. ¶10 *Presentence Investigation Report.* Over the course of several months, Mr. Kaitz and Mr. Avramovic met with UC1 and UC2 and arranged for two completed purchases of MDMA from Mr. Kaitz's source of supply (SOS) in California.

During the summer of 2010, Mr. Kaitz became fearful of UC1 and UC2, so he ceased meeting with them directly. Mr. Avramovic, however, continued to meet with UC1 and UC2 and relayed messages to Mr. Kaitz. On August 31, 2010, Mr. Avramovic met with UC1 and UC2 to

finalize the purchase of 10,000 MDMA pills from the SOS. Mr. Kaitz was never able to complete this transaction, as his SOS had a large shipment of MDMA intercepted by law enforcement during the same time frame. Approximately a month later, on October 2, 2010, Mr. Kaitz spoke to UC1 and represented that the transaction would be completed within two weeks. ¶21, *Presentence Investigation Report.* Mr. Kaitz provided this representation to UC1 in an effort to allay UC1's fears that he would not receive the MDMA pills, although Mr. Kaitz was unsure whether he would meet the two week deadline. Mr. Kaitz acknowledges that he accepted $35,000 as payment from the undercover agents and that it was his intent to complete the transaction. However, the 10,000 MDMA pills requested by UC1 and UC2 was the largest amount Mr. Kaitz had ever sold and he was uncertain whether he would be able to complete it. ¶41, *Presentence Investigation Report.*

**B.        Departures From Guidelines For the History and Characteristics of Brian Kaitz**

In addition to the above adjustments, further departures from the Guidelines and statutory minimums can be taken. §5K2.0 of the *Federal Guidelines Manual* provides other grounds for departure. In general, the sentencing court may depart from the applicable guideline range if the court finds, pursuant to 18 U.S.C.§3553(b)(1) that there exists a mitigating circumstance of a kind not adequately taken into consideration by the Sentencing Commission or not indentified by the Sentencing Commission. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the Sentencing Guidelines, policy statements and official commentary of the Sentencing Commission.

Parts H and Part K of the *Federal Sentencing Manual* address specific offender characteristics and other reasons for departures. It is clear that the Sentencing Commission did

4

not adequately take into consideration pre-arrest and pre-sentencing rehabilitation and cooperation in formulating the guidelines, and therefore, a downward departure is appropriate.

### 1. Pre-arrest and Presentencing Rehabilitation

Since Mr. Kaitz was a teen, he has struggled with significant emotional and mental health issues, for which Mr. Kaitz and his family have repeatedly sought clinical intervention. Mr. Kaitz's pre-arrest and pre-sentence efforts have been admirable and show his true nature and characteristics. Other than as a component of Acceptance of Responsibility, the guidelines do not address a departure for pre-arrest and pre-sentence rehabilitation. See U.S.S.G. §3E1.1 comment. (n.1(g)). Based on the extraordinary efforts of Mr. Kaitz, this is a factor that this Court should take into consideration when sentencing him. *See* United States v. Weinberger, 91 F.3d 642 (4th Cir. 1996); United States v. Brock, 108 F.3d 31 (4th Cir. 1997).

### 2. Pre-arrest Cooperation

§5K2.0 of the *Federal Guidelines Manual* allows for a downward departure for substantial assistance to authorities. This departure only takes into consideration assistance provided in the investigation or prosecution of another person in Federal Court. This departure does not take into consideration cooperation in related state matters or pre-arrest cooperation, and these are factors that warrant consideration. Prior to Mr. Kaitz's arrest in this matter, he provided substantial assistance to the Fairfax County Police Department, who were working in conjunction with DEA agents. Mr. Kaitz provided information which lead to several arrests in the area, the most recent of which occurred in Spring 2011.

The Guidelines do not specifically address a departure for Mr. Kaitz's extraordinary pre-arrest cooperation, yet this is a factor that this Court should take into consideration when

sentencing him.

**C.    The Kinds of Sentences Available / Need to Avoid Unwarranted Sentence Disparities Among Defendants**

Mr. Kaitz has pleaded guilty to an offense under 21 U.S.C. §841. USSG §2D1.1(b)(6) of the Federal Guidelines Manual provides that in the case of an offense under 21 U.S.C. §841, the court can reduce any drug sentence, with two additional levels, including any mandatory minimum statutory term. The criterion established in 18 U.S.C. §3553(f)(1)-(5) is as follows:

(1)  The defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines.

(2)  The defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3)  The offense did not result in death or serious bodily injury to any person;

(4)  The defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise;

(5)  Not later that the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offense that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Mr. Kaitz meets the above criterion, as noted in the Presentence Investigation Report. *See Presentence Investigation Report, ¶39 and p. 29.* Mr. Kaitz has a 1 point criminal history ¶99, *Presentence Investigation Report*. There is no indication in the Statement of Facts or Presentence Investigation Report that Mr. Kaitz used violence or a weapon or that his offense resulted in death or bodily injury. There are no aggravating adjustments for his role in the

6

offense because he was not an organizer, leader, manager, or supervisor of others in the offense ¶ 39 *Presentence Investigation Report*. Finally, not only did Mr. Kaitz cooperate prior to his arrest, he spoke with agents following his arrest. Mr. Kaitz has truthfully provided to the Government all information and evidence, and he has further offered to make himself available for debriefing.1 Therefore, the court has the authority to apply the "safety valve" to Mr. Kaitz and sentence him accordingly.

It should be noted that this Court has exercised its authority to sentence below the mandatory minimum sentence for other defendants involved in this conspiracy. (Avramovic, 1:10cr466, sentenced to sixty months with Guidelines at seventy to eighty-seven months. Note that Mr. Avramovic ultimately entered a plea of conspiracy to distribute heroin, not MDMA). 18 U.S.C. §3553(a) requires the court to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have engaged in similar conduct. In the instant matter, Mr. Kaitz worked "in concert" with Mr. Avramovic. ¶39, *Presentence Investigation Report*. Mr. Kaitz and Mr. Avramovic both have an offense base level of 27. Mr. Kaitz can be further distinguished from Mr. Avramovic because he has made substantial successful efforts to rehabilitate himself. Therefore, Mr. Kaitz should receive a similar or lesser sentence than Mr. Avramovic.

D.  **Need for Sentence Imposed / Kinds of Sentences Available**

In 1989, the Federal Bureau of Prisons designed a comprehensive substance abuse treatment strategy in an effort to change inmates' criminal and substance use behaviors. As a

---

1 The Government has requested additional information from Mr. Kaitz regarding his SOS. However, Mr. Kaitz is afraid for his personal safety if he provides that information, or any information concerning the individual who provided the link for Mr. Kaitz to the SOS. All other information has been provided.

component of this strategy, more than fifty residential drug abuse treatment programs "RDAP" were established by the Federal Bureau of Prisons. Recent research demonstrates the success of these programs in rehabilitating inmates and placing them on the road to recovery. The residential program component of the substance abuse treatment strategy provides intensive substance abuse treatment with education and work skills training. Upon completion of the program, aftercare treatment is provided in general population and at the residential re-entry center. This program maximizes the effective transition of an inmate from prison to the community.

Any inmate that volunteers for and meets the criteria of a drug use disorder, i.e. substance abuse or dependence, as defined in the American Psychiatric Association Diagnostic and Statistical Manual (DSM) is eligible to participate in the Bureau's RDAP. Mr. Kaitz recognizes the need for continual treatment and openly volunteers to be placed in a RDAP. Further, during the presentence interview, Mr. Kaitz reported that his substance use began at fifteen years of age and has continued, with short bouts of sobriety, since that time. ¶¶81 to 84, *Presentence Investigation Report.*

Based on Mr. Kaitz's diagnosis of substance abuse and his current treatment status, placement at a RDAP facility is the next logical step in his rehabilitation and recovery. 18 U.S.C. §3553(a)(2) outlines the criteria for the Court to consider in determining the need for the sentence imposed. §3553(a)(2)(D) specifically requires that Court to "provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner" when determining sentencing. Allowing Mr. Kaitz to have consistent substance abuse treatment will be the best mechanism to ensure he does not commit any further

crimes. *See* §3553(a)(2)(C).

**E.     Concerns Regarding MDMA Sentencing Guidelines**

Federal courts in other jurisdictions have recently started questioning the science behind the 500:1 MDMA-to-marijuana equivalency.  Courts, such as those in New York and Washington, have determined that a 500:1 equivalency is greater than necessary to serve the objectives of sentencing.  A court has the authority to decide that the "Guidelines are not based on empirical data and national experience, and hence 'do not exemplify the Commission's exercise of its characteristic institutional role.'" United States v. Cavera, 550 F.3d 180, 192 (2d Cir. 2008)(quoting Kimbrough v. United States, 552 U.S. 85, 109 (2007)).  Pursuant to the guidelines established in Kimbrough, the most recent research and data about the harmfulness of MDMA does not support a 500:1 marijuana equivalency.  Cocaine, by contrast, has only a 200:1 marijuana equivalency, despite the fact it has several attributes which make it more harmful than MDMA.

The Sentencing Commission's Report to Congress:  MDMA Drug Offenses, Explanation of Recent Guideline Amendments (2001) (hereinafter Ecstasy Report), "focused on the few ways in which MDMA is more harmful than cocaine, while disregarding several significant factors suggesting that it is in fact less harmful." United States v. McCarthy, 2011 U.S. Dist. LEXIS 54930, 11 (S.D. New York, 2011).  Cocaine is responsible for more emergency room visits per year than MDMA, is more addictive than MDMA, causes adverse health effects, and its trafficking is associated with more violence than MDMA.  Id.  "The Commission's selective analysis is incompatible with the goal of uniform sentencing based on empirical data." Id.

The adoption by this court of a replacement ration is permitted under Spears v. United

9

States, 555 U.S. 261, 129 S.Ct. 840 (2009). Mr. Kaitz proposes that a 200:1 equivalency for MDMA be adopted, as occurred in McCarthy. This would decrease Mr. Kaitz's base offense level from a 32 to a 28. Applying the same decreases to his offense level as noted in the Presentence Investigation Report, Mr. Kaitz would ultimately have a 23 offense level for sentencing guidelines of 46 to 57 months.

## CONCLUSION

This court is charged with the duty of imposing a sentence upon Mr. Kaitz. He asks that the Court look at the nature and circumstances of the offense, his history and characteristics, the need to avoid unwarranted sentence disparities among defendants with similar records, the need for the sentence imposed, and the kinds of sentences available. Letters attesting to Mr. Kaitz's character and contributions to society are submitted simultaneously with this Memorandum, under separate cover.

Mr. Kaitz is an addict, and this is something that he will struggle with for the rest of his life. He has demonstrated over the course of the last few months that with the correct interventions, he can remain drug free. Mr. Kaitz is now on the correct course, and he respectfully requests that this Court take this into consideration to allow him the opportunity through sentencing to remain on this path. Mr. Kaitz respectfully requests that the Court sentence him below the Guidelines to a maximum of 46 months.

Respectfully Submitted,

__/s/_____
William B. Reichhardt, VSB #20851
Counsel for Defendant
WILLIAM B. REICHHARDT & ASSOCIATES
4020 University Drive, Suite 222
Fairfax, Virginia  22030
(703) 359-6060 (telephone)
(703) 359-6065 (facsimile)
wbr@wbrlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Kara Martin Traster
Special Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Kara.M.Traster@usdoj.gov

__/s/_____
William B. Reichhardt, VSB #20851
Counsel for Defendant
WILLIAM B. REICHHARDT & ASSOCIATES
4020 University Drive, Suite 222
Fairfax, Virginia  22030
(703) 359-6060 (telephone)
(703) 359-6065 (facsimile)
wbr@wbrlaw.com